IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TITAN CUSTOM CABINETS, INC.**, *et al.*, | * |
| | * |
| Plaintiffs, | |
| | * |
| v. | Civil Action No. RDB-20-2910 |
| | * |
| **TRUIST BANK, FORMERLY KNOWN AS SUNTRUST BANK,** | * |
| | |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

This case involves claims brought by Plaintiffs Titan Custom Cabinets, Inc. ("Titan") and its owner Anders Johansson ("Johansson") against Defendant Truist Bank ("Truist"), successor by merger to SunTrust Bank ("SunTrust"). The Plaintiffs' Complaint alleges that the Defendant violated Maryland common law (Counts I, III, and IV) and the Uniform Commercial Code ("UCC") as adopted by Maryland, Md. Code. Ann., Com. Law § 1-101, *et seq.* (Count II), as a result of events that took place in 2017 with respect to Titan's two SunTrust bank accounts. (*See* ECF No. 2.) Defendant Truist has filed a Motion to Dismiss (ECF No. 6) arguing that the Plaintiffs' Complaint fails to state a claim for relief. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the Defendant's Motion to Dismiss (ECF No. 6) is GRANTED IN PART and DENIED IN PART. Specifically, the Motion is GRANTED with respect to Plaintiff Johansson's claims under Count I and Count II. These claims are DISMISSED WITH PREJUDICE. The Motion is also GRANTED with respect to both

Plaintiffs' claims under Count III. All claims under Count III are DISMISSED WITH PREJUDICE. Additionally, the Motion is GRANTED with respect to the Plaintiffs' claim for punitive damages under Count IV, and such claim is DISMISSED WITHOUT PREJUDICE. Finally, the Motion is DENIED with respect to Plaintiff Titan's claims under Counts I and II and with respect to both Plaintiffs' claims under Count IV.

## BACKGROUND

This Court accepts as true the facts alleged in the Plaintiff's Amended Complaint (ECF No. 10). *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Plaintiff Titan is a closely held corporation in the business of cabinetry work, primarily creating custom built kitchens for a variety of appliance vendors at trade shows, permanent sales displays, and other similar venues. (ECF No. 2 at ¶ 1.) Plaintiff Johansson is the principal owner and sole shareholder of Titan. (*Id.* at ¶ 2.) More than twenty years ago, Titan, and Johansson personally, began banking with SunTrust. (*Id.* at ¶ 6.) Titan had two accounts with SunTrust: a payroll account and an operating account. (*Id.* at ¶ 15.) Defendant Truist Bank was formed as a result of a merger between SunTrust and BB&T in December 2019. (*Id.* at ¶ 3.)

In early May of 2017, Johansson deposited a check from a customer into one of Titan's accounts at SunTrust. (*Id.* at ¶ 8.) The Plaintiffs allege that this check (hereinafter referred to as "Check A") was properly processed. (*Id.*) Approximately two weeks later, a different check (hereinafter "Check B") in the same dollar amount was deposited by a different SunTrust customer into an unrelated SunTrust checking account. (*Id.*) SunTrust returned Check B for "insufficient funds." (*Id.* at ¶ 9.) However, the amount of Check B was allegedly deducted from Titan's business account, as opposed to the account identified on Check B. (*Id.*) Titan

subsequently received notice that Check A had been dishonored. (*Id.*) SunTrust's local branch in Baltimore investigated the matter, and ultimately, the funds were credited back to Titan's account. (*Id.* at 10.)

On June 30, 2017, SunTrust reopened the matter. (*Id.* at ¶ 11.) A fraud investigator of the bank contacted Johansson to report that as a result of the investigation, SunTrust believed that Titan, through Johansson, had acted in a criminal and fraudulent manner and that the bank intended to take back the money from Check A that it had credited to the Titan account. (*Id.*) The investigator further advised Johansson that SunTrust would be closing Titan's accounts. (*Id.* at ¶ 12.) On July 13, 2017, Titan received written notice dated July 6, 2017 that both of its bank accounts had been closed, and in the envelope were two checks for the amounts remaining in each account. (*Id.* at ¶ 15.) Johansson stated that he "simply did not believe that [the investigator] would close [Titan's] accounts" and, therefore, he "did not deposit the checks into another bank." (*Id.* at ¶¶ 15, 16.)

On July 13, 2017 Titan began to receive notices from its customers and vendors of checks that SunTrust had dishonored. (*Id.* at ¶ 18.) The entities to whom Titan had issued checks and for whom SunTrust dishonored those checks included Harper's Appliances, Keystone Woodworking, Verizon, and TimePays (Titan's payroll service). (*Id.*) Titan tried to retract payments and reissue checks, but the checks were returned for insufficient funds. (*Id.* at ¶ 19.) At some point, Titan deposited the two checks from SunTrust into a new bank account at another facility. (*Id.* at ¶ 20.) Plaintiffs allege that at this time, Titan's employees, vendors, and customers had begun to lose confidence in Titan and believed it was no longer "reputable or solvent." (*Id.*)

3

Nevertheless, the next day, July 14, 2017, SunTrust advised Johansson that Titan's accounts would be reopened. (*Id.* at ¶ 21.) SunTrust then issued a stop payment on the two checks sent with its Notice Letter received by Johansson on July 13, 2017. (*Id.* at ¶ 22.) This caused Titan to "unknowingly" issue checks on the new accounts for which the deposited checks were worthless. (*Id.*) This created problems for Titan, which had been attempting to "mend its relationships" with its customers, vendors, and employees. (*Id.*) Plaintiffs claim that Titan did not have access to an online banking system, so Johansson could not determine which checks were dishonored and which were cashed, and he was forced to spend weeks trying to correct errors, banking transactions, and automated payments. (*Id.* at ¶¶ 22, 23.) Plaintiffs claim that these problems ultimately led Johansson to spend $20,000 of his own funds "to keep his business alive." (*Id.* at ¶ 24.)

Plaintiffs allege further errors on behalf of SunTrust after reopening Titan's accounts. In October of 2017, SunTrust deposited a check payable to Titan into its payroll account, instead of the operating account as Titan had designated. (*Id.* at ¶ 25.) As a result, more checks were returned for insufficient funds because Johansson thought that the funds were available for use in its operating account when in fact they were in the payroll account. (*Id.*) Additionally, in November of 2017, SunTrust honored a check negotiated more than 180 days after issuance, even though it bore the legend that it would only be good for 90 days. (*Id.* at ¶ 26.) The Complaint in this case makes no further allegations against the Defendant Truist Bank with respect to the years 2018 and 2019.

Ultimately, on July 24, 2020, almost three years after the events of 2017, the Plaintiffs filed the subject Complaint in the Circuit Court for Baltimore City, titled *Titan Custom Cabinets, Inc. v. Truist Bank*, No. 24-C-20-002986, alleging that Titan and Johansson personally:

> have sustained significant financial losses, including but not limited to, damage to the reputation of both Plaintiffs, loss of business from referrals through Titan's vendors, loss of Titan's employees' confidence and increased turnover, increased expenses by accountants [and] advisors, and the hours spent by Mr. Johansson to discover and try to repair damage to Titan, as well as the diminished value of Titan to prospective purchasers of the business.

(*Id.* at ¶ 27.) The Complaint further alleges that Johansson planned to sell Titan and become a consultant, "using his education and expertise as a consultant to larger companies," and that such plan is no longer viable "as a result of the actions of Defendant." (*Id.* at ¶ 28.) The case was removed to this Court on October 8, 2020 pursuant to 28 U.S.C. §§ 1332, 1367, and 1441. (*See* ECF No. 1.) The Plaintiffs seek relief under both the common law, as well as the Uniform Commercial Code as adopted in Maryland, Md. Code. Ann., Com. Law § 1-101, *et seq*. Specifically, the Complaint alleges the Defendant is liable for breach of contract (Count I); violation of Maryland Commercial Law § 4-402, Md. Code. Ann., Com. Law § 4-402 (Count II); lack of good faith and fair dealing (Count III); and negligence (Count IV). On October 15, 2020, Defendant Truist filed a Motion to Dismiss (ECF No. 6).

## STANDARD OF REVIEW

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmt'y Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While

5

Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint, *Iqbal*, 556 U.S. at 678-79, and must "draw all reasonable inferences [from those facts] in favor of the plaintiff," *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678-79; *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). Mere recitals of the elements of a cause of action, supported only by conclusory statements do not suffice. *Iqbal*, 556 U.S. at 678. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the

complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* When allegations in a complaint have not crossed the line from conceivable to plausible, the plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

## ANALYSIS

### A. Breach of Contract (Count I)

Count I of the Plaintiffs' Complaint alleges breach of contract. Specifically, the Plaintiffs claim that the Defendant had a "long-standing banking relationship with Plaintiff Johansson and Plaintiff Titan," and therefore, "an implied contract" existed between the Defendant and each of the parties. (ECF No. 2 at ¶ 30.) The Complaint alleges that the Defendant breached the "Banking Contract" for many reasons, including dishonoring Check A and taking funds out of Titan's operating account; converting funds from Titan's account; closing Titan's account without notice or cause; depositing checks in incorrect accounts; and putting a "stop payment" on checks it issued to Titan without notice. (*Id.* at ¶ 31.) At this stage, the Complaint adequately alleges breach of contract with respect to Plaintiff Titan, however, Johansson's claim will be dismissed.

The Defendant argues that to the extent that the claims in this case involve dishonored checks, any liability of Defendant Truist is determined by application of the relevant provisions of the Uniform Commercial Code ("UCC"). Therefore, the Defendant claims, the breach of contract claim, and all other common law-based claims alleged in the Complaint, are preempted. The Defendant is correct that the UCC may preempt common law claims in some contexts. One of the "underling purposes" of the UCC is to "make uniform the law among

the various jurisdictions." Md. Code Ann., Com. Law § 1-103.  Section 1-103 of the UCC allows for the continued application of all supplemental bodies of law *unless* they are explicitly displaced by the UCC.  Accordingly, "when the Code and the common law both provide a means of recovery, the Code should displace the common law, because variations in the common law among states destroy the uniformity in commercial transactions sought to be accomplished by the [UCC]." *Equitable Life Assur. Soc. of the U.S. v. Okey*, 812 F.2d 906, 909 (4th Cir. 1987) (citing R. Hillman, *Construction of the Uniform Commercial Code: UCC Section 1-103 and "Code" Methodology*, 18 B.C. Indus. & Comm. L. Rev. 655, 662-63 (1997)).

If the Plaintiffs' common law claims in this case were based entirely on the Defendant's alleged wrongful dishonor of certain items, the Defendant's argument for preemption may have some weight.  Section 4-402 of Maryland's UCC provides that "a payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item." Md. Code Ann., Com. Law § 4-402(a).  This section clearly provides a remedy for a claim based on wrongful dishonor, and to allow a plaintiff to bring common law claims solely on such a basis may create room for inconsistency between jurisdictions.  However, the Plaintiffs' Complaint clearly provides other bases for the Defendant's alleged breach such as improperly closing accounts, issuing stop payments without notice, and erroneously depositing certain funds.  (*See* ECF No. 2 at ¶ 31.)  The UCC does not clearly provide a remedy for these alleged errors.  As pled, the Plaintiffs' common law claim for breach of contract is not entirely preempted by § 4-402 of the Maryland UCC.

Specifically, this Court addresses the substance of the Plaintiffs' claims.  As the basis of this Court's jurisdiction lies in diversity of citizenship, under 28 U.S.C. § 1332(a), Maryland

law applies. *Hartford Fire, Ins. Co. v. Harleysville, Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Under Maryland law, a claim for breach of contract must "allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by the defendant." *Cont'l Masonry Co., Inc. v. Verdel Constr. Co, Inc.*, 369 A.2d 566, 569 (Md. 1977). Such a contract need not be written or explicitly created. An implied contract is a "true contract" under which "the parties had a contract that can be seen in their conduct rather than in an explicit set of words." *Mogavero v. Silverstein*, 790 A.2d 43, 52 (Md. Ct. Spec. App. 2002) (citing *Mass Transit Admin. v. Granite Constr. Co.*, 471 A.2d 1121 (Md. Ct. Spec. App. 1984)); *see also Slick v. Reinecker*, 839 A.2d 784 (Md. Ct. Spec. App. 2003) (collecting cases defining implied contract under Maryland law). Further, Maryland courts have recognized that the relationship between a bank and its customer is contractual in nature: it is one of "debtor and creditor, with the rights between the parties considered as contractual, and derived by implication from the banking relationship unless modified by the parties." *Kiley v. First Nat'l Bank*, 649 A.2d 1145, 1149 (Md. Ct. Spec. App. 1994) (citing *Univ. Nat'l Bank v. Wolfe*, 369 A.2d 570 (Md. 1977)). In establishing that there was a long-standing banking relationship between the Plaintiffs and the Defendant, the Complaint has adequately alleged the existence of a contract between each of the Plaintiffs and the Defendant.

However, the Complaint only alleges a *breach* of contract with respect to the contract between Plaintiff Titan and the Defendant. "[S]keletal factual allegations accompanied by nothing more than mere conclusions and general averments of a breach of a contractual duty do not suffice to establish" a plaintiff's breach of contract claim. *Cont'l Masonry*, 369 A.2d at

569. All of the factual allegations in the Complaint which support the Plaintiffs' claim for breach of contract pertain to actions the Defendant took with respect to only Titan's accounts. (*See* ECF No. 2 at ¶ 31.)  While these allegations create a plausible claim for relief with respect to Plaintiff Titan, they do not provide any basis for a breach of contract claim by Plaintiff Johansson individually.  "The basic Maryland rule is that privity of contract is a prerequisite for recovery on that contract." *Safer v. Perper*, 569 F.2d 87, 94 (D.C. Cir. 1977).  Johansson was simply not a party to the contract which was allegedly breached, and therefore, fails to allege breach of contract in this case.

### B. Claim under the Uniform Commercial Code, Md. Ann., Com. Law § 4-402 (Count II)

Under Count II of the Complaint, Plaintiffs allege that the "Defendant wrongfully and without cause dishonored checks that were properly payable to Titan's customers, vendors and/or employees," as well as "wrongfully and without notice closed Plaintiff Titan's operating account and its payroll account, without any cause to do so," in violation of Md. Code Ann., Com. Law § 4-402.  (ECF No. 2 at ¶¶ 34-36.)  Section 4-402 provides that "[a] payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item."  Md. Code Ann., Com. Law § 4-402(b).  An item is "dishonored" when "presentment is duly made and acceptance or payment is refused."  *Kiley*, 649 A.2d at 1156 (citing Md. Code Ann., Com. Law § 3-507).  A dishonor is wrongful "when the 'bank's refusal is not justifiable pursuant to the Code or an accepted course of dealing with the customer or a recognized usage of trade.'" *Id.* (citing *Wright v. Comm'l & Sav. Bank*, 464 A.2d 1080, 1085 (Md. 1983)).

The Complaint alleges that the Defendant dishonored and refused to pay several items drawn on Titan's accounts. (*See* ECF No. 2 at ¶¶ 18, 19, 25, 35, 37.) Whether these refusals were wrongful remains an open question, but the Plaintiffs' allegations with respect to the wrongful closing of Titan's accounts, mismanagement of its funds, and other errors are sufficient to establish a plausible claim for relief. The status of the accounts at the time the checks were dishonored is determinative, as "[t]he obligation of a bank to pay a customer's checks, or its right to refuse payment, depends upon the state of the customer's account at the time of presentment." *Kiley*, 649 A.2d at 1156 (citing 10 Am. Jur. 2d, *Banks* § 571, at 542-43 (1963 & supp. 1994)). However, as with the claim for breach of contract, the Complaint only provides a basis for a claim under § 4-402 by Plaintiff Titan. All of the factual allegations in the Complaint which allege wrongful dishonor pertain to items drawn on Titan's accounts. (*See* ECF No. 2 at ¶¶ 35-38.) Plaintiff Johansson has simply not alleged that any items related to his own personal accounts were dishonored, and therefore, he lacks standing to bring a claim under § 4-402 of the Maryland UCC.

### C. Lack of Good Faith and Fair Dealing (Count III)

In Count III of the Complaint, Plaintiffs allege that the "Defendant owed the Plaintiffs the duty of good faith and fair dealing, arising out of the long-standing banking relationship between Defendant and Plaintiffs." (ECF No. 2 ¶ 42.) "In Maryland, there is no separate or independent cause of action for breach of good faith and fair dealing." *Davis v. Wilmington Fin., Inc.*, No. PJM-09-1505, 2010 WL 1375363, at *8 (D. Md. Mar. 26, 2010) (citing *Edell & Assoc., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 444 (4th Cir. 2001)). Maryland law does recognize an implied covenant of good faith and fair dealing in contracts. *Eastern Shore*

11

*Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 182-83 (4th Cir. 2000). "However, the covenant *is limited* to prohibiting one party from acting in such a manner as to prevent the other party from performing his obligations under the contract." *Edell*, 264 F.3d at 444 (citing *Eastern Shore*, 213 F.3d at 182-83). This covenant "does not extend to imply a general duty of good faith and fair dealing in the performance of obligations under the contract." *Id.* Count III of this Complaint as pled by the Plaintiffs is simply not a recognized cause of action under Maryland law.

### D. Negligence (Count IV)

Under Count IV of the Complaint the Plaintiffs allege negligence, claiming that the Defendant failed to use reasonable and ordinary care in accordance with commercial banking standards. Specifically, the Complaint claims that the Defendant failed to comply with reasonable commercial standards when it allegedly made several errors including dishonoring Check A; closing Plaintiff Titan's accounts without notice; dishonoring checks submitted for payment after Titan's account were improperly closed; blocking Titan's access to on-line banking; placing a "stop payment" on the checks sent with the Notice Letter without notification; incorrectly depositing checks into the wrong accounts; and honoring a stale check. (*See* ECF No. 2 at ¶ 50.) As explained above, if this common law claim were asserted solely on the basis of wrongful dishonor of certain items, this claim might be preempted under the UCC as adopted in Maryland. However, the Plaintiffs support their negligence claim with other factual bases not clearly covered by provisions of the UCC. Therefore, this Court turns to the substance of the Plaintiffs' claim.

Under Maryland law "[t]o establish a cause of action in negligence, a plaintiff must prove the existence of four elements: a duty owed to him . . ., a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *Jacques v. First Nat'l Bank of Maryland*, 515 A.2d 756, 758 (Md. 1986) (citations omitted). The Parties dispute whether the Plaintiffs have sufficiently alleged the required duty. It is a long-standing principle of Maryland law that the relationship between a bank and its customer is ordinarily considered a contractual relationship and "is not fiduciary in nature." *Parker v. Columbia Bank*, 604 A.2d 521, 532 (Md. Ct. Spec. App. 1992) (citing *Yousef v. Trustbank Sav., F.S.B.*, 568 A.2d 1134, 1138 (Md. Ct. Spec. App. 1990)). Further "[a] duty assumed or implied in contract" does not "by that fact alone" become a tort duty. *Jacques*, 515 A.2d at 759. Therefore, the duty necessary to establish a claim for negligence does not automatically arise from a contractual relationship between two parties.

However, the Maryland Court of Appeals held in *Jacques* that a bank did have a tort duty to "use reasonable care" in processing a residential loan application. *Id.* at 762. The court carefully explained that the basis for the duty of care was "an express, albeit oral, contract." *Parker v. Columbia Bank*, 604 A.2d 521, 532 (Md. Ct. Spec. App. 1992) (citing *Jacques*, 515 A.2d at 762)). The court found that "implicit in the undertaking of the Bank to process the loan application [was] the agreement to do so with reasonable care." *Jacques*, 515 A.2d at 762. The court reasoned that agreeing to process the relevant loan application was a "significant responsibility." *Id.* at 763. It also noted that the nature of the bank's business weighed in favor of finding a tort duty, comparing the work of the bank to that of physicians, attorneys, architects, and public accountants for which the law provides a tort duty of care. *Id.* "[I]n

13

those occupations requiring particular skill, a tort duty to act with reasonable care will be imposed on those who hold themselves out as possessing the requisite skill." *Id.* (citing *St. Paul at Chase v. Mfrs. Life Insur.*, 278 A.2d 12 (Md. 1971), *cert. denied*, 404 U.S. 857 (1971)). In sum, a contractual promise may provide a predicate for a tort duty of reasonable care. *Parker*, 604 A.2d at 532. This is a "narrow exception" to the general rule "that Maryland does not recognize negligence actions that arise solely out of a contractual relationship." *Spaulding v. Wells Fargo Bank, N.A.*, 920 F. Supp. 2d 614, 621 (D. Md. 2012).

To prevail in this case, the Plaintiffs Titan and Johansson will need to establish that such narrow exception applies, but at this stage, their Complaint alleges a plausible claim for relief. The list of errors allegedly made by the Defendant in its dealings with Titan and Johansson sufficiently state a plausible cause of action and "infer more than a mere possibility of misconduct." *Iqbal*, 556 U.S. at 678. Additionally, the Defendant's conduct allegedly injured both Plaintiffs. As the primary owner and sole shareholder of Titan, Plaintiff Johansson was allegedly directly and proximately harmed by the errors made regarding Titan's accounts. (ECF No. 2 at ¶ 2.) Reputational damage to Titan and any loss of business or devaluation of the company which results are harms suffered by Johansson. Both Plaintiffs Titan and Johansson have stated a cause of action for negligence.

However, with respect to this negligence claim, the Plaintiffs have not sufficiently alleged that they are entitled to punitive damages. Under Maryland law, punitive damages are only available upon a showing of actual malice. *See Dent v. Montgomery Cty. Police Dep't*, 745 F. Supp. 2d 648, 662 (D. Md. 2010). Actual malice is defined as conduct "characterized by evil motive, intent to injure, ill will, or fraud." *Komornik v. Sparks*, 629 A.2d 721, 725 (Md. 1993).

Plaintiffs allege that the Defendant acted with malice or "ill will and intent to injure" (ECF No. 2 at ¶ 51), but fail to offer any factual allegations that would support this legal conclusion. Plaintiffs have not alleged facts that would entitle them to punitive damages. Accordingly, this punitive damages claim is DISMISSED WITHOUT PREJUDICE.

## CONCLUSION

For the reasons stated above, the Defendant Truist's Motion to Dismiss (ECF No. 6) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED with respect to Plaintiff Johansson's claims under Count I and Count II. These claims are DISMISSED WITH PREJUDICE. The Motion is also GRANTED with respect to both Plaintiffs' claims under Count III. All claims under Count III are DISMISSED WITH PREJUDICE. Additionally, the Motion is GRANTED with respect to the Plaintiffs' claim for punitive damages under Count IV, and such claim is DISMISSED WITHOUT PREJUDICE. Finally, the Motion is DENIED with respect to Plaintiff Titan's claims under Counts I and II and with respect to both Plaintiffs' claims under Count IV.

A Separate Order follows.

Dated: December 8, 2020.

                                                                                            /s/              

                                                             Richard D. Bennett

                                                             United States District Judge